IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-01222-NYW-STV

GLOVEBOX TECHNOLOGIES INC.,

    Plaintiff,

v.

RICARDO DA CRUZ, and
COMPLETE AUTO REPORTS, LLC,

    Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendants' Motion to Dismiss Or, in the Alternative, Transfer Venue (the "Motion" or "Motion to Dismiss"). [Doc. 12]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire case file, and concludes oral argument would not materially assist in the resolution of this matter. For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

## BACKGROUND

This case arises out of a trademark dispute. Plaintiff Glovebox Technologies Inc. ("Plaintiff" or "Glovebox") operates a business under the brand "ELECTRONIC GLOVE BOX" and owns the associated registered trademark. [Doc. 1 at ¶ 10, 12, 39–41]. In or around March 2019, Plaintiff began using the term "GLOVEBOX" by itself in connection with its mobile application (or "app"), which is available to download from Apple and Google online platforms. [*Id.* at ¶ 15]. Plaintiff has filed a trademark application for the mark "GLOVEBOX," which remains pending. [*Id.* at ¶¶ 12, 28].

Defendant Ricardo Da Cruz ("Mr. Da Cruz") "is and was an officer and/or director" of Defendant Complete Auto Reports, LLC ("CAR," and collectively with Mr. Da Cruz, "Defendants").  [*Id.* at ¶ 6].  Plaintiff alleges that Defendants began using the mark "DIGITAL GLOVEBOX" in May 2019 and that their "DIGITAL GLOVEBOX" app is also available on Apple and Google platforms.  [*Id.* at ¶¶ 21, 23].  According to Plaintiff, CAR is not known by the "Glovebox" name and Defendants "do not have any rights to GLOVEBOX, apart from DIGITAL GLOVEBOX," [*id.* at ¶ 28], but on January 6, 2022, Mr. Da Cruz filed a trademark infringement complaint with Apple, complaining about Plaintiff's "GLOVEBOX" app, [*id.* at ¶ 27].  Apple investigated the infringement complaint, which required Plaintiff to "defend itself to maintain its applications on the platform."  [*Id.* at ¶ 29].  Plaintiff also alleges that Mr. Da Cruz submitted this same sort of infringement complaint to Google.  [*Id.* at ¶ 59].

Plaintiff initiated this civil action on May 16, 2023, alleging that Defendants have infringed upon its trademarks by using the "DIGITAL GLOVEBOX" mark in commerce, thereby causing confusion in the market and trading upon Plaintiff's goodwill.  *E.g.*, [*id.* at ¶¶ 43–47].  Glovebox brings two trademark infringement claims against Defendants under the Lanham Act, [*id.* at ¶¶ 38–66], as well as an unfair competition claim, [*id.* at ¶¶ 67–75].[1]  Defendants have since filed their Motion to Dismiss, seeking dismissal of Plaintiff's claims for lack of personal jurisdiction and improper venue.  [Doc. 12 at 10–

---

[1] Plaintiff also brings a fourth claim titled "Injunctive Relief Under Lanham Act:  15 U.S.C. § 1116 against all Defendants."  [Doc. 1 at 15].  However, injunctive relief is a type of relief sought, not a standalone cause of action.  *See Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1141 (D. Colo. 2019).

21].[2]  In the alternative, they request that this case be transferred to the United States District Court for the District of New Jersey, where they believe venue is proper. [*Id.* at 21–24]. The Court has reviewed the Parties' arguments and finds the personal jurisdiction issue dispositive of this matter and limits its analysis accordingly.

## LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge a court's exercise of personal jurisdiction over it. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of demonstrating that a court has personal jurisdiction over the defendant. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). When a court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008). This showing may be made through affidavits or other written materials. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). "The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

At this stage of the case, a court must take the well-pleaded allegations in the plaintiff's complaint as true, so long as they are not contradicted by the defendant's affidavits. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The court need

---

[2] The Court cites to documents using the page numbers generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

not credit conclusory, implausible, or speculative allegations. *Dental Dynamics*, 946 F.3d at 1228; *Dudnikov*, 514 F.3d at 1070. And if the parties present conflicting affidavits, all factual disputes in the affidavits must be resolved in the plaintiff's favor. *Wenz*, 55 F.3d at 1505.

## ANALYSIS

"Where, as here, the underlying action is based on a federal statute, the court applies state personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *Toytrackerz LLC v. Koehler*, No. 2:08-cv-02297-GLR, 2009 WL 1505705, at *3 (D. Kan. May 28, 2009). The Lanham Act does not provide for nationwide service of process. *See be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011); *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004). Thus, in a federal question case such as this one, personal jurisdiction is determined according to the law of the forum state. *See* Fed. R. Civ. P. 4(k)(1)(A); *Impact Prods.*, 341 F. Supp. 2d at 1189.

Colorado's long-arm statute "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). "Therefore, if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant." *Benton*, 375 F.3d at 1075. "[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial

4

justice.'"  *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A court may exercise general personal jurisdiction or specific personal jurisdiction over a defendant.  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017).  General jurisdiction means that a court may exercise personal jurisdiction over an out-of-state defendant for all purposes.  *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).  General jurisdiction is available if the defendant's affiliations with the forum state are "so continuous and systematic" that it is "essentially at home" there.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  *Id.* at 924.  "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts."  *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 614 (10th Cir. 2012) (quotation omitted).

A court may exercise specific personal jurisdiction over an out-of-state defendant only if the cause of action relates to the defendant's contacts with the forum state.  *Old Republic*, 877 F.3d at 904.  In other words, "specific jurisdiction is proper if there is 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021) (quoting *Bristol-Myers Squibb*, 582 U.S. at 262).

5

Glovebox contends that this Court has both general and specific personal jurisdiction over Defendants. *See* [Doc. 14 at 10–15]. Defendants disagree that they are subject to personal jurisdiction in Colorado. [Doc. 12 at 10–19]. As a result, Defendants request that this Court dismiss this action for lack of personal jurisdiction, or in the alternative, transfer it to the United States District Court for the District of New Jersey. *See generally* [Doc. 12].

I. **General Jurisdiction**

As explained above, a court may exercise general personal jurisdiction over an out-of-state defendant if that defendant's contacts with the forum state are "so continuous and systematic" that it is "essentially at home" in the state. *Goodyear*, 564 U.S. at 919. It is not enough that an out-of-state defendant may have contractual relationships or business dealings with a person or entity located in the forum state, may correspond with a resident of the forum state, or may make sporadic visits to the forum state. *Shrader v. Biddinger*, 633 F.3d 1235, 1246–47 (10th Cir. 2011). "In order for general jurisdiction to lie, a foreign corporation must have a substantial amount of contacts with the forum state." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

Glovebox contends that this Court "may have" general jurisdiction over Defendants because "Defendants have conducted business in this District." [Doc. 14 at 14]. According to Plaintiff, general jurisdiction exists because Defendants "advertise their application nationwide" and "provide services nationwide, including [in] Colorado, via [CAR's] website and applications." [*Id.* at 15]. Plaintiff does not raise arguments that are specific to either Mr. Da Cruz or CAR and it does not cite any legal authority in support of its arguments. *See generally* [*id.*].

An individual is subject to general jurisdiction in the individual's place of domicile. *Goodyear*, 564 U.S. at 919. The Parties agree that Mr. Da Cruz is a resident of New Jersey. *See, e.g.*, [Doc. 1 at ¶ 6; Doc. 12 at 7]; *see also* [Doc. 12-4 at ¶ 1 (Mr. Da Cruz declaring that he is "a resident of the State of New Jersey")]. However, residency is not necessarily synonymous with domicile, *see Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989), and so the Court is without sufficient information to determine whether New Jersey is Mr. Da Cruz's state of domicile*, see Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006) ("To establish domicile in a particular state, a person must be physically present in the state and intend to remain there.").

Nevertheless, it is Glovebox's burden to establish the Court's personal jurisdiction over Mr. Da Cruz. *Dental Dynamics*, 946 F.3d at 1228. Glovebox does not argue that Mr. Da Cruz is domiciled in Colorado, so as to demonstrate that he is subject to personal jurisdiction in this state, *see generally* [Doc. 14], and Mr. Da Cruz has made declarations that suggest Colorado is not his state of domicile, *see* [Doc. 12-4 at ¶ 3 ("I have no personal contacts with the state of Colorado."); *id.* at ¶ 13 ("I [do not] own property or maintain any financial accounts in Colorado.")]. Nor does Glovebox explain why Mr. Da Cruz, an individual, is subject to a state's general jurisdiction simply because his company supposedly conducts business in that state. *See generally* [Doc. 14]. Plaintiff has thus not carried its burden to demonstrate that this Court has general jurisdiction over Mr. Da Cruz.

Turning to CAR, Plaintiff contends that the company is subject to general jurisdiction in Colorado because it advertises its website and provides services

nationwide, including in Colorado. [*Id.* at 15]. To determine whether a corporate defendant is "at home" in the forum state, the Tenth Circuit considers the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 457 (10th Cir. 1996). Defendants argue that CAR does not own property in Colorado, is not registered to do business in Colorado, does not employ a registered agent in the state, and does not specifically solicit business in Colorado. [Doc. 12 at 11–12]. Plaintiff responds that it is "aware of at least one download of Defendants' application" in Colorado—which happens to have been made by Plaintiff's Colorado-based corporate officer, *see* [Doc. 14-1 at ¶¶ 1, 10]—and that, "on information and belief," it "believes there is much more contact with Colorado than Defendants admit," [Doc. 14 at 15].

Glovebox has not met its burden of demonstrating the Court's general personal jurisdiction over CAR. Glovebox makes no argument that CAR is "at home" in Colorado under the four *Kuenzle* factors, *see generally* [*id.*], and indeed, the record before the Court indicates that CAR has no traditional physical presence in Colorado, *see, e.g.*, [Doc. 12-4 at ¶¶ 7, 10, 12–13 (Mr. Da Cruz declaring that CAR is not registered to do business in Colorado, "has not directed any marketing towards Colorado for both the Digital Glovebox app and its web-based system for auto owners and shop owners," has not generated any revenue in Colorado, and does not maintain any accounts in Colorado)]. As for Plaintiff's reliance on CAR's widely accessible website, "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions

8

relating to the site, simply because it can be accessed by residents of the forum state." *Shrader*, 633 F.3d at 1241. When a party's personal jurisdiction arguments rely on internet-based contacts, "it is necessary to adapt the analysis of personal jurisdiction . . . by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Id.* at 1240. "A web site will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions *on a sustained basis with a substantial number of residents* of the forum." *Id.* at 1243 (quotation omitted).

Equally importantly, Glovebox does not allege in its Complaint or argue in response to the Motion to Dismiss that CAR intentionally directed its internet activity at Colorado, that its website singled out Colorado or Colorado residents in any way, or that CAR used its app or website to interact with a substantial number of Colorado residents on a sustained basis. *See generally* [Doc. 1; Doc. 14]. CAR's maintenance of a website that is accessible across the country is insufficient to subject it to the personal jurisdiction of Colorado courts, *see Baldwin v. Athens Gate Belize, LLC*, No. 18-cv-00586-PAB-NYW, 2019 WL 4674332, at *6 (D. Colo. Sept. 24, 2019) (allegation that the defendant maintained a website accessible in Colorado, without more, was insufficient to confer general jurisdiction), and allegations that one Colorado resident downloaded CAR's app in Colorado likewise does not demonstrate that CAR is "at home" in Colorado, *cf. Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1203 (D. Kan. 2016) (finding that the defendant's singular sale to a Kansas resident did not demonstrate that the defendant intentionally directed its activities at Kansas). Similarly, Plaintiff's argument

that CAR "advertise[s] [its] application nationwide," *see* [Doc. 14 at 15], which is supported only by a citation to Mr. Da Cruz's declaration that CAR "has *not* directed *any* marketing towards Colorado for both the Digital Glovebox app and its web-based system for auto owners and shop owners," *see* [Doc. 12-4 at ¶ 10 (emphasis added)], is not enough to demonstrate general personal jurisdiction over CAR.  *See Wellness Publ'g v. Barefoot*, 128 F. App'x 266, 269 (3d Cir. 2005) ("[A]n advertising campaign with national scope does not by itself give rise to general jurisdiction in a state where it is broadcast.").

Accepting Plaintiff's arguments might well render CAR "at home"—and subject to general jurisdiction in—every state in the country, which "would eviscerate the personal jurisdiction requirement as it currently exists."  *Agape Flights, Inc. v. Covington Aircraft Engines, Inc.*, 771 F. Supp. 2d 1278, 1288 (E.D. Okla. 2011) (quotation omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) ("Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." (quotation omitted)).  In sum, Plaintiff has not met its burden of showing that this Court has general personal jurisdiction over Defendants.

## II.    Specific Jurisdiction

"Even though a defendant's forum state contacts may not support general jurisdiction, they may still meet the less stringent standard for specific jurisdiction if sufficiently related to the cause of action."  *Old Republic*, 877 F.3d at 904.  The "minimum contacts" test for specific jurisdiction has two requirements:  First, the defendant must have "purposefully directed its activities at residents of the forum state," and second, "the plaintiff's injuries must arise out of the defendant's forum-related activities."  *Id.* (alterations omitted) (quoting *Shrader*, 633 F.3d at 1239).  "The purposeful direction

requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 904–05 (cleaned up).

Plaintiff asserts that "one way to satisfy the purposeful direction test . . . is by an intentional act that was expressly aimed at the forum state with knowledge that the brunt of the injury would be felt in the forum state." [Doc. 14 at 11]. This argument invokes the "effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984), which requires a three-part showing: "(a) an intentional action . . ., that was (b) expressly aimed at the forum state . . ., with (c) knowledge that the brunt of the injury would be felt in the forum state," *Dudnikov*, 514 F.3d at 1072. Each of these elements must be met to satisfy the purposeful direction standard. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 967 (10th Cir. 2022).

However, the *Calder* effects test requires more than showing that a forum state resident was harmed by the defendant. *Old Republic*, 877 F.3d at 917. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285.

Again dealing with Defendants collectively, Glovebox argues that Defendants purposefully directed their activities at Colorado "by filing a complaint with Apple and Google and against Plaintiff to remove Plaintiff's application" from Apple and Google platforms, which Plaintiff contends was meant to injure Glovebox in Colorado. [Doc. 14

11

at 12]; *see also* [*id.* at 13 (Plaintiff arguing that "Defendants' actions were aimed at Plaintiff, i.e. to remove Plaintiff's app from both platforms")].

The Court is respectfully unpersuaded by this argument. To satisfy the second element of the *Calder* effects test, i.e., that the defendant's conduct was expressly aimed at the forum state, "the forum state must be the 'focal point' of the defendant's tortious conduct." *Eighteen Seventy*, 32 F.4th at 969 (emphasis omitted). But here, the Complaint contains no clear allegations that Defendants engaged in any intentional act that was "expressly aimed" at Colorado, *Dudnikov*, 514 F.3d at 1072; *see also generally* [Doc. 1], so as to show that Defendants' conduct connects them meaningfully to *Colorado itself*. Indeed, the Complaint mentions the state of Colorado only to (1) assert that venue is appropriate in the District of Colorado, [Doc. 1 at ¶ 4]; (2) allege that Plaintiff is headquartered in Colorado, [*id.* at ¶ 5]; and allege, in a conclusory fashion, that "Defendants are subject to the jurisdiction of this Court by virtue of its [sic] substantial contacts with Colorado, including participation in the acts and events occurring within this District as described herein," [*id.* at ¶ 9]. These "acts and events occurring within this District" are not described any further by Plaintiff in the Complaint. *See generally* [*id.*].

Plaintiff contends that this case is "overwhelmingly similar" to *Dudnikov*, a 2008 Tenth Circuit decision. *See* [Doc. 14 at 13]. In *Dudnikov*, the Colorado-based plaintiffs sold fabric and crafts on eBay and allegedly sold some products that infringed upon the defendants' copyrighted works. 514 F.3d at 1068. The defendants filed a notice with eBay complaining about the plaintiffs' sale of the infringing products, and eBay canceled the plaintiffs' upcoming eBay auction. *Id.* at 1069. After the plaintiffs contacted the defendants and requested that the defendants withdraw their notice, the defendants

responded and threatened to sue the plaintiffs in federal court. *Id.* The plaintiffs beat the defendants to federal court and sought a declaratory judgment that they had not infringed the defendants' copyrights, and in response, the defendants moved for dismissal based on a lack of personal jurisdiction. *Id.* The Tenth Circuit reversed the grant of that motion upon concluding that the defendants had purposefully directed their activities at Colorado, analogizing the defendants' conduct to a "bank shot" in basketball:

> A player who shoots the ball off of the backboard intends to hit the backboard, but he does so in the service of his further intention of putting the ball into the basket. Here, defendants intended to send the [notice] to eBay in California, but they did so with the ultimate purpose of cancelling plaintiffs' auction in Colorado. Their "express aim" thus can be said to have reached into Colorado in much the same way that a basketball player's express aim in shooting off of the backboard is not simply to hit the backboard, but to make a basket.

*Id.* at 1075. But the Tenth Circuit stressed that "the mere foreseeability of causing an injury in the forum state is, standing alone, insufficient to warrant a state exercising its sovereignty over an out-of-state defendant" and that, under *Calder*, a plaintiff "must establish . . . not only that [the] defendants foresaw (or knew) that the effects of [their] conduct would be felt in the forum state, but also that [the] defendants undertook *intentional actions that were expressly aimed at that forum state*." *Id.* at 1077.

While *Dudnikov* may have some factual similarity to the present case, it is nevertheless distinguishable. In *Dudnikov*, the Tenth Circuit repeatedly emphasized the defendants' alleged knowledge that the plaintiffs operated their online storefront out of Colorado. *See, e.g.*, *id* at 1068 (noting that the eBay pages "clearly list[ed] the location of [the plaintiffs'] merchandise as Hartsel, Colorado, and link[ed] to their personal website which contains more information about their business, including its location in Colorado"); *id.* at 1076 ("Plaintiffs' location is clearly disclosed on their eBay auction page, as is the

13

fact that Colorado residents had to pay sales tax for any purchases from plaintiffs."); *id.* at 1082 ("For purposes of this motion, . . . we must assume defendants knew plaintiffs' business was located in Colorado."). It was this knowledge, coupled with the defendants' intentional conduct, that led the Tenth Circuit to conclude that the defendants had expressly aimed their conduct at Colorado. *See id.* at 1075 ("[W]hile . . . the [notice] formally traveled only to California, it can be fairly characterized as an intended means to the further intended end of cancelling plaintiffs' auction in Colorado."). Courts applying or distinguishing *Dudnikov* have similarly highlighted this aspect of the decision. *See, e.g.*, *Eighteen Seventy*, 32 F.4th at 972–73 (noting that "the defendants [in *Dudnikov*] had notice that the plaintiffs' business activities related to the defendants' alleged infringement claim . . . were anchored in the forum state," and nevertheless "acted with the allegedly tortious intent to disrupt or impair those forum-based activities"); *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 846 (10th Cir. 2020) ("In . . . *Dudnikov,* . . . [the] plaintiff made a sufficient showing that defendants knew of the plaintiff's presence in the forum State and intentionally targeted the plaintiff there."); *Newsome v. Gallacher*, 722 F.3d 1257, 1269 (10th Cir. 2013) ("The [*Dudnikov*] plaintiffs' allegations, however, established that their Colorado location was obvious from the eBay auction page. This, we said in *Dudnikov*, was enough at the pleading phase to establish express aiming at Colorado." (citation omitted)); *see also id.* (finding that the plaintiff had established the express aiming element where the defendants allegedly committed a tort against a company that the defendants knew "operated exclusively in Oklahoma," which "ma[de] Oklahoma the focal point of any tort against" the company).

The Complaint in this case, however, does not contain *any* allegations that Defendants knew, prior to lodging their infringement complaints, that Plaintiff's lone location is in Colorado, so as to show that Defendants "foresaw (or knew) that the effects of their conduct would be felt in" Colorado. *Dudnikov*, 514 F.3d at 1077; *see also generally* [Doc. 1].[3] Nor does the Complaint contain any other allegations suggesting that Defendants' intent was to remove Plaintiff's app from the Apple and Google platforms *only in Colorado*, which might suggest that Defendants were expressly aiming at Colorado under a *Dudnikov* "bank shot" theory. Indeed, Plaintiff does not allege *any* targeted conduct. *See, e.g.*, [Doc. 1 at ¶¶ 16–17 (Plaintiff alleging that it uses its trademarks "throughout the United States"); *id.* at ¶ 60 (alleging that "Defendants willfully made the complaints to Apple and Google to stop Apple and Google from providing Plaintiff's mobile application to consumers")]; *cf. Behav. Analyst Certification Bd., Inc. v. Moates*, 644 F. Supp. 3d 919, 931 (D. Colo. 2022) (that the defendant knew the plaintiff was located in Colorado and that nationwide conduct would have impact on the plaintiff in Colorado was "not enough" to establish specific jurisdiction over the defendant).

This is where the case diverges from *Dudnikov*—there are simply no well-pleaded allegations supporting a conclusion that Defendants intentionally directed their conduct

---

[3] To the extent that Plaintiff suggests that Defendants knew that Plaintiff was based in Colorado because "Plaintiff was listed as a Colorado entity, 'GloveBox Inc. CO'" in an email from Apple to Plaintiff concerning Defendants' infringement complaint, *see* [Doc. 14 at 13]; *see also* [Doc. 1-5 at 2], this email does not demonstrate Defendants' knowledge at the time they filed their infringement complaints, and the Complaint in this case contains no affirmative allegations of Defendants' knowledge, *see generally* [Doc. 1]. And it is well settled that a defendant's out-of-state commission of trademark infringement alone—even with the knowledge that the infringement would cause economic injury in Colorado—falls well short of contact that is expressly aimed at this forum. *See Floyd's 99 Holdings, LLC v. Jude's Barbershop, Inc.*, 898 F. Supp. 2d 1202, 1208–09 (D. Colo. 2012) (collecting cases).

at the forum state. *See Eng. Tea Shop USA Corp. v. Hall*, No. 3:20-cv-03453-B, 2021 WL 1966815, at *7 (N.D. Tex. May 17, 2021) (finding *Dudnikov* inapplicable where the plaintiff's the complaint was "devoid of any facts suggesting that [the defendant's] intent was to halt [the plaintiff's] sales in Texas," so even though the defendant "may have taken its shot by submitting takedown notices to Amazon.com, there [was] no evidence that the end goal was specific to Texas" and there was no "'bank shot' aimed at Texas"); *Strong v. Scout Sec., Inc.*, No. 1:21-cv-00418-KWR-LF, 2022 WL 266709, at *9 (D.N.M. Jan. 28, 2022) ("Unlike the defendants in [*Dudnikov*], . . . who acted with the 'express aim' to halt a Colorado-based plaintiff's auction occurring in Colorado, . . . here, the Individual Defendants' conduct occurred entirely outside of New Mexico, is wholly unrelated to New Mexico, and Plaintiff serves as the only link to the state of New Mexico."). The fact that Plaintiff, the subject of Defendants' alleged infringement complaints to Apple and Google, happens to be located in Colorado is not enough to create a meaningful link between Defendants and the forum state. See *Walden*, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works [or operates], an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."); *see also Shrader*, 633 F.3d at 1245 ("[A] plaintiff's residence [or operation] in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state.").

The Court concludes that Plaintiff has not met its burden of demonstrating the Court's specific personal jurisdiction over either Defendant. Having decided that the Court lacks personal jurisdiction over Defendants, the Court need not reach the Parties'

arguments concerning proper venue. For the reasons set forth in this Order, the Motion to Dismiss is **GRANTED**, and Plaintiff's claims are **DISMISSED without prejudice** for lack of personal jurisdiction.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1) Defendants' Motion to Dismiss Or, in the Alternative, Transfer Venue [Doc.12] is **GRANTED**;

(2) Plaintiff's claims against Defendants are **DISMISSED without prejudice** for lack of personal jurisdiction under Rule 12(b)(2);

(3) Defendants are awarded their costs pursuant to D.C.COLO.LCivR 54.1; and

(4) The Clerk of Court is directed to close this case.

DATED: March 11, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge